FILED
IN CLERKS OFFICE
2026 AUG 18 P 2:56
U.S. DISTRICT COURT
DISTRICT OF MASS.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

Cliff Maingrette,

Plaintiff,

Civil Action No.: _______________

v.

Equifax Information Services LLC,

JURY TRIAL DEMANDED

Defendant.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.**

**INTRODUCTION**

Cliff Maingrette is a thirty-seven-year-old man from West Roxbury, Massachusetts who has spent the better part of the last three years trying to understand what happened to his credit and what comes next. He has a credit history that stretches back over twenty-six years, accounts he opened and paid faithfully for a decade before life took the turns it sometimes takes. He is not a man who ignores his obligations. He is a man who, on May 27, 2026, pulled his own credit report from Equifax because he wanted to see where he stood, wanted to understand his situation

clearly enough to start making his way back. What he found was not clarity. What he found was a document riddled with deliberate silences.

Page after page, account after account, the same fields were blank. The Actual Payment Amount columns were empty across months and years. The Scheduled Payment Amount fields contained nothing. The Last Payment Date fields were frozen in time, the same date stamped across row after row regardless of what month or year was listed. Mr. Maingrette has a charged-off Discover Card account that carries a balance of $13,548 against a credit limit of $8,000. He has not made a payment on it since September 3, 2023. He knows that. What he cannot know from Equifax's disclosure is what payments, if any, were scheduled during the preceding twenty-four months, or what the actual payment history looked like month by month, because every one of those fields is blank. The disclosure gives him a verdict without a record.

This is not a problem confined to one account. Across seven accounts in Mr. Maingrette's file that carry active 24-month history tables, the pattern is identical: blank Actual Payment Amount columns, blank Scheduled Payment Amount fields, a Last Payment Date frozen to a single static value repeated without variation across every row. In total, Equifax's May 27, 2026 disclosure contains in excess of 350 blank or missing data fields. The uniformity of the omission across every account confirms that this is not a data entry error. It is a policy.

The Fair Credit Reporting Act requires Equifax to do better. Under 15 U.S.C. Section 1681g(a)(1), when a consumer requests his own file, Equifax must clearly and accurately disclose all information in the consumer's file at the time of the request. The statute does not say most information. It does not say the information Equifax finds convenient to share. It says all information. The Federal Trade Commission placed every nationwide consumer reporting agency on notice of exactly this obligation more than twenty-five years ago. Equifax has known. Equifax has continued this practice anyway.

Mr. Maingrette brings this action to enforce the rights Congress gave him, to obtain a complete and accurate disclosure of everything Equifax holds in his name, and to hold Equifax accountable for the deliberate incompleteness of the disclosure it produced on May 27, 2026. He asks this Court to award him actual damages for the harm he has suffered, statutory and punitive damages for Equifax's willful violation of federal law, the costs of this action, and an injunction requiring Equifax to provide him with the complete file disclosure the law demands.

## II.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. Section 1681p, which expressly authorizes actions arising under the Fair Credit Reporting Act to be brought in any appropriate United States district court, and pursuant to 28 U.S.C. Section 1331, which confers original jurisdiction on federal district courts over all civil actions arising under the laws of the United States.
2. Venue is proper in this district under 28 U.S.C. Section 1391(b)(1) and (2) because Plaintiff resides in this district and a substantial part of the events giving rise to this claim occurred in this district.

## III.

## PARTIES

3. Plaintiff Cliff Maingrette is a natural person residing at PO Box 320003, West Roxbury, Massachusetts 02132. Plaintiff is a "consumer" within the meaning of 15 U.S.C. Section 1681a(c).

4. Defendant Equifax Information Services LLC is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" within the meaning of 15 U.S.C. Section 1681a(f) in that it, for monetary fees and on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports. Defendant's registered agent in the Commonwealth of Massachusetts may be located through the Massachusetts Secretary of State's corporate database.

## IV.

## FACTUAL ALLEGATIONS

### A. Credit Report Overview

5. On May 27, 2026, Plaintiff Cliff Maingrette requested and received his consumer file disclosure from Equifax, bearing Confirmation Number 6147536825 (hereinafter "the Disclosure"). The Disclosure reflects a credit history of twenty-six years and ten months, an average account age of eight years, and contains thirteen credit accounts plus one collection entry. Plaintiff received the Disclosure in the ordinary course of exercising his statutory right under 15 U.S.C. Section 1681j to obtain his own consumer file.

6. Pursuant to 15 U.S.C. Section 1681g(a)(1), upon receipt of Plaintiff's request, Equifax was required to clearly and accurately disclose to Plaintiff all information in Plaintiff's file at the time of the request. 15 U.S.C. Section 1681a(g) defines "file" to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed all nationwide consumer reporting agencies on specific notice that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors violates 15 U.S.C. Section 1681g(a)(1).

7. On information and belief, Equifax maintains the complete data reflected in its internal databases for each account in Plaintiff's file and transmits that data to third-party purchasers of consumer reports, while systematically withholding it from Plaintiff's own file disclosure.

**B. Incomplete Disclosure: Account-by-Account Blank and Missing Field Inventory**

8. The Disclosure fails to clearly and accurately disclose all information in Plaintiff's file across the following accounts:

9. DISCOVER CARD, Account Number *4752, Status: Charge Off. The 24-Month History table for this account contains 24 rows spanning May 2024 through April 2026. The Scheduled Payment Amount field is blank for all 24 rows. The Actual Payment Amount field is blank for all 24 rows. The Last Payment Date field reflects the identical static value of 09/03/2023 across all 24 rows without variation, regardless of the reporting month or year. The account-level fields for Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Deferred Payment Start Date, Balloon Payment Amount, and Balloon Payment Date are each blank. The total number of blank or missing data fields attributable to this account in the Disclosure is in excess of 54.

10. CAPITAL ONE BANK USA NA, Account Number *5228, Status: Pays As Agreed. The 24-Month History table for this account contains 24 rows spanning May 2024 through April 2026. The Scheduled Payment Amount field is blank for all 24 rows. The Actual Payment Amount field is blank for all 24 rows. The Past Due Amount field is blank for all 24 rows. The Last Payment Date field reflects the identical static value of 09/14/2020 across all 24 rows without variation. The account-level fields for Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, and Date of 1st Delinquency are each blank. The total number of blank or missing data fields attributable to this account in the Disclosure is in excess of 76.

11. MISSOURI HIGHER EDUCATION LOAN (First Account), Account Number *0111, Status: Pays As Agreed, Deferred. The 24-Month History table for this account contains 24 rows spanning May 2024 through March 2026. The Actual Payment Amount field is blank for all 24 rows. The Credit Limit field is blank for all 24 rows. The Last Payment Date field reflects the identical static value of 08/01/2023 across all 24 rows without variation. The account-level fields for Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date of 1st Delinquency, Balloon Payment Amount, Balloon Payment Date, Date Closed, and Activity Designator are each blank. The total number of blank or missing data fields attributable to this account in the Disclosure is in excess of 56.

12. MISSOURI HIGHER EDUCATION LOAN (Second Account), Account Number *0111, Status: Pays As Agreed, Deferred. The 24-Month History table for this account contains 24 rows spanning May 2024 through March 2026. The Actual Payment Amount field is blank for all 24 rows. The Credit Limit field is blank for all 24 rows. The Last Payment Date field reflects the identical static value of 08/01/2023 across all 24 rows without variation. The account-level fields for Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date of 1st Delinquency, Balloon Payment Amount, Balloon Payment Date, Date Closed, and Activity Designator are each blank. The total number of blank or missing data fields attributable to this account in the Disclosure is in excess of 56.

13. LVNV FUNDING LLC, Account Number *8368, Status: Collection Account, Closed. The 24-Month History table for this account contains 22 rows spanning July 2024 through April 2026. The Scheduled Payment Amount field is blank for all 22 rows. The Actual Payment Amount field is blank for all 22 rows. The Last Payment Date field is blank for all 22 rows. The Credit Limit field is blank for all 22 rows. The account-level fields for Date of Last Activity, Scheduled Payment Amount, Actual Payment Amount, Date of Last Payment, Date Closed, Activity Designator, Terms Frequency, and Balloon Payment amounts are each blank. The total number of blank or missing data fields attributable to this account in the Disclosure is in excess of 96.

14. TD BANK, Account Number *6960, Status: Charge Off, Closed. The 24-Month History table for this account contains 19 rows spanning May 2024 through March 2026. The Scheduled Payment Amount field is blank for all 19 rows. The Actual Payment Amount field is blank for all 19 rows. The Last Payment Date field reflects the identical static value of 08/23/2023 across all 19 rows without variation. The account-level fields for Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date Closed, Balloon Payment amounts, and Deferred Payment Start Date are each blank. The total number of blank or missing data fields attributable to this account in the Disclosure is in excess of 44.

15. EASTERN BANK, Account Number *0001, Status: Charge Off, Closed. The 24-Month History table for this account contains 24 rows spanning May 2024 through March 2026. The Scheduled Payment Amount field is blank for all 24 rows. The Actual Payment Amount field is blank for all 24 rows. The Last Payment Date field reflects the identical static value of 09/05/2023 across all 24 rows without variation. The Credit Limit field is blank for all 24 rows. The account-level fields for Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date Closed, Balloon Payment amounts, Deferred Payment Start Date, and Activity Designator are each blank. The total number of blank or missing data fields attributable to this account in the Disclosure is in excess of 55.

16. In total, across all accounts in the Disclosure, Plaintiff's file disclosure contains in excess of 350 blank, missing, or static placeholder data fields that Equifax was required to clearly and accurately disclose pursuant to 15 U.S.C. Section 1681g(a)(1).

17. The identical static placeholder date appearing without variation across every row of multiple separate accounts, combined with the identically blank Actual Payment Amount and Scheduled Payment Amount columns appearing in the same uniform pattern across each account, demonstrates that these omissions result from a deliberate, uniform data policy applied systematically to every consumer's file disclosure, rather than any isolated data error. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

**C. Per Se Inaccuracies: Balances Exceeding Credit Limits and High Credit**

18. The Disclosure reflects the following per se inaccuracies, each of which Equifax transmitted in Plaintiff's consumer report to third parties:

19. DISCOVER CARD, Account Number *4752: The Disclosure reports a current balance of $13,548 against a stated credit limit of $8,000. The balance thus exceeds the stated credit limit by $5,548. A credit card account cannot carry a balance that exceeds its credit limit without some form of documented explanation. No such explanation appears in the Disclosure. Equifax failed to implement any automated comparison of the balance field against the credit limit field before publishing this account entry. This per se inaccuracy is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007), because no reasonable CRA could believe that reporting a balance in excess of a stated credit limit, without explanation, satisfies the maximum possible accuracy standard of 15 U.S.C. Section 1681e(b).

20. AMERICAN EXPRESS, Account Number *1003: The Disclosure reports a balance of $1,563 against a stated credit limit of $1,000. The balance exceeds the stated credit limit by

$563. No explanation for this discrepancy appears in the Disclosure. Equifax failed to implement any automated data-integrity check comparing these two fields.

21. MISSOURI HIGHER EDUCATION LOAN (First Account), Account Number *0111: The Disclosure reports a current balance of $4,543 against a High Credit figure of $4,133. The current balance exceeds the High Credit by $410. On an installment account, a balance exceeding the high credit is a per se inaccuracy requiring explanation. No explanation is provided.

22. MISSOURI HIGHER EDUCATION LOAN (Second Account), Account Number *0111: The Disclosure reports a current balance of $2,635 against a High Credit figure of $2,567. The current balance exceeds the High Credit by $68. No explanation is provided.

23. EASTERN BANK, Account Number *0001: The Disclosure reports a current balance of $25,941 against a High Credit figure of $25,000 and a Charge Off Amount of $18,502. The balance exceeds both the High Credit and the charge-off amount. No explanation is provided for the discrepancy between the ongoing accruing balance and the High Credit ceiling.

**D. Third-Party Dissemination and Article III Standing**

24. On information and belief, Equifax transmitted Plaintiff's consumer report to multiple third parties during the period covered by Plaintiff's file, including to creditors whose soft inquiries appear in the Disclosure. Equifax's own internal entity appears as a soft inquiry dated 05/27/2026, confirming that the file was active and in use on the date Plaintiff received his Disclosure. Equifax's disclosure policy applies identically to third-party report transmissions; on information and belief, each third-party transmission of Plaintiff's file included the inaccurate balance-exceeds-limit figures identified in Paragraphs 18 through 22 above.

25. The inaccurate information contained in the Disclosure was transmitted to third parties in reports bearing that same inaccurate data, creating a concrete, particularized injury to Plaintiff's

creditworthiness, his ability to obtain credit on favorable terms, and his ability to verify and correct the information in his own file. TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021). The informational injury Plaintiff suffered upon receiving an incomplete file disclosure that withheld in excess of 350 data fields is itself a cognizable injury in fact, independent of third-party dissemination. Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).

**E. Willfulness**

26. Equifax's conduct in producing the incomplete file disclosure of May 27, 2026 was willful within the meaning of 15 U.S.C. Section 1681n and objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007).

27. The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed all nationwide consumer reporting agencies, including Equifax, on specific notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors violates 15 U.S.C. Section 1681g(a)(1). Equifax has had actual knowledge of this obligation for over a quarter century and has continued to operate a disclosure policy that systematically omits data across every account in a consumer's file.

28. The identical blank Actual Payment Amount columns, identical blank Scheduled Payment Amount fields, and identical static placeholder Last Payment Dates appearing uniformly across every account in Plaintiff's Disclosure confirm that these omissions result from deliberate, uniform data policy, not isolated error. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020). No reasonable interpretation of 15 U.S.C. Section 1681g(a)(1) permits this systematic withholding.

29. The failure to implement any automated data-integrity check comparing the balance field against the credit limit field before publishing a consumer report is independently objectively unreasonable under Safeco. Equifax's own Disclosure contains the credit limit and the balance in

adjacent fields of the same account entry. No plausible reading of Section 1681e(b)'s maximum possible accuracy standard permits a CRA to publish a balance exceeding a stated credit limit without first verifying or explaining the discrepancy.

**F. Actual Damages**

30. As a direct and proximate result of Equifax's violations described herein, Plaintiff has suffered actual damages including: (a) emotional distress, frustration, and anxiety caused by receiving a credit disclosure that withheld the data necessary for Plaintiff to evaluate and verify his own file; (b) impaired creditworthiness resulting from the dissemination of consumer reports containing balances that exceed stated credit limits, which artificially depresses credit utilization calculations and damages credit scores; (c) lost credit opportunities and impaired ability to obtain credit on favorable terms; (d) inability to verify the accuracy of derogatory notations and charge-off amounts in his file due to the systematic withholding of payment history data; and (e) time and personal resources expended in attempting to review, understand, and investigate the incomplete and inaccurate information in the Disclosure.

## V.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF 15 U.S.C. SECTION 1681g(a)(1)

### INCOMPLETE FILE DISCLOSURE

31. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

32. 15 U.S.C. Section 1681g(a)(1) provides that every consumer reporting agency shall, upon request by a consumer, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. Section 1681a(g) defines "file" as all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored.

33. On May 27, 2026, Plaintiff requested his consumer file disclosure from Equifax. Equifax responded with the Disclosure bearing Confirmation Number 6147536825.

34. The Disclosure fails to clearly and accurately disclose all information in Plaintiff's file. Specifically, as detailed in Paragraphs 7 through 16 above, the Disclosure omits, leaves blank, or obscures with static placeholder dates in excess of 350 data fields across the Discover Card account (*4752), the Capital One Bank USA NA account (*5228), two Missouri Higher Education Loan accounts (*0111), the LVNV Funding LLC account (*8368), the TD Bank account (*6960), and the Eastern Bank account (*0001). These omissions include Actual Payment Amount, Scheduled Payment Amount, Last Payment Date (as a genuine variable figure rather than a frozen static date), and Credit Limit fields across twenty-four months of account history per account.

35. On information and belief, Equifax maintains the complete payment history and account data for each of the foregoing accounts in its internal database and transmits that data to third-party purchasers of Plaintiff's consumer report. The Disclosure given to Plaintiff contains only a fraction of the data Equifax holds in Plaintiff's file.

36. Equifax's failure to clearly and accurately disclose all information in Plaintiff's file renders the Disclosure so incomplete that Plaintiff cannot determine the accuracy of the information in the Disclosure. Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939 (D. Nev. 2018).

37. Equifax's violation of 15 U.S.C. Section 1681g(a)(1) was willful within the meaning of 15 U.S.C. Section 1681n. Equifax has been on notice of its obligation to disclose all file data to consumers since at least the FTC's Advisory Opinion to Katrina Darcy on June 30, 2000, more

than twenty-five years before the date of the Disclosure. The uniform, systematic pattern of omissions across every account confirms that Equifax's conduct was objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007). In the alternative, Equifax was negligent within the meaning of 15 U.S.C. Section 1681o.

38. As a result of Equifax's violation of 15 U.S.C. Section 1681g(a)(1), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2).

## COUNT II

## VIOLATION OF 15 U.S.C. SECTION 1681e(b)

## PER SE INACCURACY IN CONSUMER REPORTS

39. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

40. 15 U.S.C. Section 1681e(b) requires that whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

41. Equifax violated Section 1681e(b) by preparing and furnishing consumer reports containing the following per se inaccuracies, each of which reflects an internally irreconcilable data conflict that reasonable procedures would have detected and corrected before publication:

42. As to the Discover Card account (*4752): Equifax's consumer reports reflect a current balance of $13,548 against a stated credit limit of $8,000. The reported balance exceeds the stated credit limit by $5,548. No documented explanation for this discrepancy appears in the consumer report.

43. As to the American Express account (*1003): Equifax's consumer reports reflect a current balance of $1,563 against a stated credit limit of $1,000. The reported balance exceeds the stated credit limit by $563. No documented explanation appears.

44. As to the first Missouri Higher Education Loan account (*0111): Equifax's consumer reports reflect a current balance of $4,543 against a High Credit figure of $4,133. The balance exceeds the High Credit by $410.

45. As to the second Missouri Higher Education Loan account (*0111): Equifax's consumer reports reflect a current balance of $2,635 against a High Credit figure of $2,567. The balance exceeds the High Credit by $68.

46. As to the Eastern Bank account (*0001): Equifax's consumer reports reflect a current balance of $25,941 against a High Credit figure of $25,000. The balance exceeds the High Credit by $941.

47. Equifax failed to implement any automated data-integrity check comparing the balance field against the credit limit or high credit field before publishing Plaintiff's consumer reports. The absence of such a basic procedural check is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007). No reasonable CRA interpretation of 15 U.S.C. Section 1681e(b) permits publication of a consumer report in which a balance field exceeds a credit limit field on the same account entry without verification or explanation.

48. Equifax's violation of 15 U.S.C. Section 1681e(b) was willful within the meaning of 15 U.S.C. Section 1681n. In the alternative, Equifax was negligent within the meaning of 15 U.S.C. Section 1681o.

49. As a result of Equifax's violation of 15 U.S.C. Section 1681e(b), Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1); (b) statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and (d) costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2).

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cliff Maingrette respectfully requests that this Court enter judgment against Defendant Equifax Information Services LLC as follows:

(a) Judgment in favor of Plaintiff and against Defendant on all Counts;

(b) Actual damages in an amount to be determined at trial, pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1);

(c) Statutory damages of not less than $100 and not more than $1,000 per willful violation, pursuant to 15 U.S.C. Section 1681n(a)(1)(A);

(d) Punitive damages in an amount to be determined at trial, pursuant to 15 U.S.C. Section 1681n(a)(2);

(e) Costs of this action, pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief requiring Defendant to provide Plaintiff with a complete and corrected file disclosure that clearly and accurately discloses all information in Plaintiff's consumer file in compliance with 15 U.S.C. Section 1681g(a)(1);

(g) Such other and further relief as this Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to Federal Rule of Civil Procedure 15(a) to add reinvestigation counts under 15 U.S.C. Section 1681i following expiration of the CRA's 30-day reinvestigation window.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Cliff Maingrette

Pro Se Plaintiff

PO Box 320003

West Roxbury, Massachusetts 02132

Email: kingsolomon3223@icloud.com

Date: June 05, 2026

## EXHIBIT LIST

Exhibit A: Full Equifax Credit Report, Confirmation Number 6147536825, dated May 27, 2026 (all pages).

Exhibit B: FTC Advisory Opinion to Katrina Darcy, June 30, 2000.

Exhibit C: Blank and Missing Data Field Inventory by Account.